**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EARL MARTIN, et al.,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **BRAD ANDERSON,** | : | **NO. 07-CV-2965** |
| **Defendant** | : | |

**MEMORANDUM OPINION**

**TIMOTHY R. RICE**                                                        **October 29, 2008**
**U.S. MAGISTRATE JUDGE**

In this action under 42 U.S.C. § 1983, plaintiff Earl Martin alleges defendant Brad

Anderson, a former detective sergeant with the Lancaster City Police Department, violated his

constitutional rights by maliciously prosecuting him.  Martin also brings a claim for failure to

investigate and for malicious prosecution under Pennsylvania law.  Plaintiff Barbara Martin,

Martin's wife, alleges loss of consortium.  Both plaintiffs seek punitive damages and attorney's

fees.[1]

Anderson arrested and charged Martin with three counts of violating the Pennsylvania

Motor Vehicle Chop Shop and Illegally Obtained and Altered Property Act, 18 Pa. C.S. §§ 1.3,

1.4(b)[2] [hereinafter "Chop Shop Act"], and four counts of receiving stolen property, in violation

---

[1]  Martin withdrew his municipal claims against the City of Lancaster.  See Plaintiff's
Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment at 12 (E.D.
Pa. filed Oct. 1, 2008) [hereinafter Plaintiff's Brief].  By separate order, the caption will be
amended accordingly.

[2]  18 Pa.C.S. § 1.3 provides: "Any person who knowingly: (1) owns, operates or conducts
a chop shop; or (2) transports, sells, transfers, purchases or receives any motor vehicle or motor
vehicle part that was illegally obtained either to or from a chop shop commits a felony of the
second degree . . . ."
18 Pa.C.S. § 1.4(b) provides: "Any person who purchases, receives, disposes, sells,

of 18 Pa. C.S.A. § 3925(a).[3]  Anderson based these charges on information provided by an eyewitness informant, which he corroborated by searching the National Crime Information Center (NCIC) computer system, Martin's admissions, and items obtained from a search of Martin's business.  Anderson's arrest of Martin was also approved by the Lancaster County District Attorney and a Lancaster County Court of Common Pleas Judge.

The District Attorney's Office eventually withdrew the charges after the Court of Common Pleas suppressed the evidence obtained from the search.  See Statement of Undisputed Facts in Support of Defendants' Motion for Summary Judgment at ¶ 15 (E.D. Pa. filed Sept. 8, 2008) [hereinafter "Defendants' Statement of Undisputed Facts"].  Anderson seeks summary judgment, arguing he had probable cause to initiate criminal proceedings against Martin.  See Brief in Support of Defendants' Brad Anderson and City of Lancaster's Motion for Summary Judgment at 5 (E.D. Pa. filed Sept. 8, 2008) [hereinafter "Defendants' Brief"].  Therefore, he maintains he is entitled to qualified immunity for the section 1983 malicious prosecution claim, and qualified immunity under the Pennsylvania Political Subdivisions Tort Claims Act, 42 Pa.C.S. § 8550, [hereinafter "Tort Claims Act"] for the state law malicious prosecution claim. See id. at 14.  Anderson also contends he is entitled to summary judgment on Martin's failure to

─────────────────────────

transfers or possesses a motor vehicle or motor vehicle part with knowledge that the vehicle identification number of the motor vehicle or motor vehicle part has been altered, counterfeited, defaced, destroyed, disguised, falsified, forged, obliterated or removed with the intent to conceal or misrepresent the identity or prevent the identification of a motor vehicle or motor vehicle part commits a felony of the third degree . . . ."

[3]  18 Pa.C.S.A. § 3925(a) provides: "A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner."

2

investigate claim because no such claim is cognizable under the law.  See id. at 13.  Finally, Anderson argues because the malicious prosecution claims fail as a matter of law, he is entitled to summary judgment on the loss of consortium, punitive damages, and attorney's fees claims. See id. at 17-18.

The parties agree the dispositive question is whether Anderson had probable cause to initiate criminal proceedings against Martin.  Following oral argument on October 20, 2008, and upon consideration of the parties' submissions, I grant Anderson's motion for summary judgment because he possessed sufficient probable cause to arrest and charge Martin and, therefore, Anderson is entitled to qualified immunity under both federal and Pennsylvania law.

I.     Background

The evidence will be viewed in the light most favorable to Martin, the non-moving party. See Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

Martin owned and operated M & R Auto, an automotive body and restoration business in Lancaster, Pennsylvania.  Douglas Lopez, a mechanic for M & R Auto, contacted his brother, Roberto Lopez, a sergeant in the Lancaster City Police Department, concerning suspicious activities he had observed involving Martin and his son, Ryan.  See Defendants' Brief at 8.  In a statement to the Lancaster City Police, Lopez alleged on November 12 or 13, 2001, he observed Ryan Martin stripping a gray Toyota 4Runner in the rear lot of M & R Auto.  See Statement of Douglas Lopez to Lancaster Bureau of Police at 3 (Nov. 21, 2001) [hereinafter "Statement of Douglas Lopez"].  Lopez found this peculiar because the car appeared to be in good condition. See id.  Lopez then observed Martin and his son having a conversation next to the 4Runner.  See id. at 2.  Later, Lopez noticed Ryan Martin placed the frame and other unusable parts of the gray

3

4Runner in a red trash dumpster located on the north side of the main building, and placed what was left of the 4Runner inside a locked garage.[4]  See id.  Lopez found this odd because normally when vehicles are cut for parts at M & R Auto, they are left outside overnight.  See id.  Lopez asked Ryan Martin about the 4Runner and claims Ryan told him he was cutting the car because M & R Auto could not obtain title for it.  See id. at 3.  This heightened Lopez's suspicions.  See id.

In his statement to the police, Lopez claims on November 19, 2001, he noticed a "nice looking" red Chevrolet Blazer was brought out of the same garage in which the 4Runner was stored.  See id.  He claims he observed Jim Davis removing pieces from that vehicle.  See id.  When Lopez saw the vehicle later returned to the garage, however, he realized it was not cut up.  See id.  Because both Lopez and Davis were suspicious of illegal activity, Davis provided Lopez with the vehicle identification numbers (VIN) from the 4Runner and the Blazer to give to Lopez's brother to determine whether the vehicles were stolen.  See id.  Lopez gave the VIN numbers to his brother, who provided them to Anderson.  See id. at 4.

Anderson checked the VIN numbers from both vehicles in the NCIC computer system and both were listed as stolen from Del Ray Beach, Florida and Maryland, respectively.  See Defendants' Statement of Undisputed Facts at ¶ 8(e), (g).  Anderson called the police departments in both states and confirmed the vehicles were stolen.  See Dep. of Brad Anderson at 80:19-24; 81:1-6.  Anderson then went to M & R Auto to look around the perimeter and

_____

[4]  Jim Davis, another mechanic at M & R Auto, told Lopez the 4Runner came out of a locked garage in the back lot of the business earlier that day.  See Statement of Douglas Lopez at 2.

corroborate the information Lopez provided.[5]  See id. at 81:10-17.  On November 21, 2001, with

the authorization of the District Attorney's Office, Anderson applied for and executed a search

warrant at M & R Auto.  See id. at 88:16-18.  When the search began, Anderson discovered the

state court judge had signed the warrant only in one place, not two, as required.  See id. at

100:12-13; 101:4-5.  Upon the advice of the District Attorney's Office, Anderson halted the

search and had the judge re-execute the warrant.  See id. at 104:15-21.  At a 2006 suppression

hearing in Martin's criminal trial, however, the Commonwealth could not distinguish which

items police had seized before or after Anderson returned with a validly executed warrant.  The

trial court, therefore, held the search was illegal and suppressed all evidence derived from it.

As a result of the search, police officers recovered the stolen gray Toyota 4Runner and the

stolen red Chevrolet Blazer, along with a stolen 1999 Toyota Camry and major parts of a stolen

1995 Ford Mustang.  See Affidavit of Probable Cause at ¶ 11-15, Commonwealth v. Martin, No.

011-29632 (filed Sept. 22, 2004) [hereinafter "Affidavit of Probable Cause"].  The 4Runner and

Camry were cut and chopped into pieces; the Camry's VIN number was obliterated and

destroyed; the Mustang was dismantled into parts; and the Blazer was partially dismantled.  See

id. at ¶ 16.  Anderson claims during the search he asked Martin how many stolen vehicles he had

on his property, and Martin immediately replied three.  See Dep. of Brad Anderson at 99:11-13.

Martin then explained, however, he had three vehicles for which he did not have title.  See id. at

99:13-16.  After the search, Anderson questioned Martin at the Lancaster City police station

where Martin admitted he owned M & R Auto and he did not have any paperwork, bills of sale,

---

[5]  Anderson corroborated the following information: a diagram of M & R Auto, and the
red dumpster and automobile parts Lopez described.  See Dep. of Brad Anderson at 81:10-17.

or titles for the four stolen vehicles.  <u>See</u> Statement by Earl Martin at 3 (Nov. 21, 2001)
[hereinafter "Statement by Earl Martin"].  Martin also acknowledged he suspected the vehicles
were stolen or "hot," and the rollback truck driver who sold them to him recommended Martin
"get rid of them" when Martin asked for paperwork.  <u>See</u> <u>id.</u>

On November 22, 2004 – three years later – the District Attorney filed a criminal
complaint, sworn by Anderson, charging Martin with three counts of violating the Chop Shop
Act and four counts of receiving stolen property.  <u>See</u> Criminal Complaint, <u>Commonwealth v.</u>
<u>Martin</u>, No. 011-29632 (filed Sept. 22, 2004).  Anderson attached an Affidavit of Probable Cause
to the criminal complaint detailing his experience in auto theft, the information provided by
Lopez, the NCIC computer system search results listing the vehicles as stolen, and the stolen
vehicles and parts seized from M & R Auto.  <u>See</u> <u>id.</u>  The District Attorney's Office approved the
criminal complaint before the judge executed it.  <u>See</u> Affidavit of Todd Brown, Assistant District
Attorney, Lancaster County at ¶ 11 [hereinafter "Affidavit of Todd Brown"].  The District
Attorney's Office, however, withdrew the charges in October 2006 after the trial court
suppressed the evidence derived from the search of M & R Auto.

Martin claims he did not know the vehicles were stolen.  His claim rests on Anderson's
failure to appreciate the unique role of an automobile salvage business, which involves dealing in
automobile parts from a variety of legitimate sources.  Thus, he suggests, even stolen parts are
subsequently sold in a legitimate market if the vehicle is recovered after an insurance claim is
resolved.  Part of his business involves dealing with salvaged vehicles and when a salvage yard
owner purchases vehicles from insurance companies, settling the title out-of-state can take two-
to-five months.  <u>See</u> Plaintiff's Counterstatement of Material Facts in Opposition to Defendants'

6

Motion for Summary Judgment at ¶ 4 (E.D. Pa. filed Oct. 1, 2008) [hereinafter "Plaintiff's Counterstatement of Material Facts"].

      B & H Auto, located in Maryland, delivered the Blazer to Martin without paperwork and promised Martin paperwork would be forthcoming. See id. at ¶ 5. Martin claims he has never "scratched, changed, or obliterated a VIN number from a vehicle or automobile part." See id. at ¶ 7. Martin also questions Lopez's credibility because Lopez never took any courses as an auto mechanic, did not work on reconstructed vehicles, was reprimanded for having too many visitors during work hours, and could not see the majority of work activity at M & R Auto because he worked in the back. See id. at ¶ 9-10. Davis, who provided Lopez the VIN numbers, had a criminal background, which Martin claims Anderson failed to investigate before executing both the search and arrest warrants. See id. at ¶ 12.

      In addition, Martin alleges neither he nor his family members ever discussed anything regarding stolen vehicles or parts at M & R Auto, and further, neither Martin nor his sons cut up vehicles in good condition. See id. at ¶ 13. Martin did not purchase the Mustang, Camry and 4Runner as intact vehicles in perfectly good condition; rather they were purchased as parts or "clips" to be used for needed parts, which is a standard custom and practice in the business. See id. at ¶ 14. Martin also claims neither he nor his sons placed vehicles in secure or restricted areas on his property. See id. at ¶ 15.

II.    Legal Standard

      Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving

party bears the burden of showing the record reveals no genuine issue as to any material fact and that they are entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Once the moving party has met its burden, the non-moving party must go beyond the pleadings to set forth "specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  However, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts;" it must produce competent evidence supporting opposition.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

I must resolve all justifiable inferences in the non-moving party's favor.  Sommer v. Vanguard Group, 461 F.3d 397, 403 (3d Cir. 2006).  I may not consider evidence on a motion for summary judgment that would not be admissible at trial.  Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 n.13 (3d Cir. 1999).  I may not weigh the evidence or make credibility determinations.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Therefore, "where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true."  Big Apple BMW, Inc., 974 F.2d at 1363.

To defeat a motion for summary judgment, factual disputes must be both material and genuine.  Anderson, 477 U.S. at 248.  An issue is "material" if it is predicated upon facts that are relevant and necessary and that may affect the outcome of the matter pursuant to the underlying law.  Id.  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Id. at 248-49.  Summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, because such a failure as to an essential element necessarily renders all other facts

8

immaterial.  Celotex Corp., 477 U.S. at 322-23.  Thus, if there is only one reasonable conclusion from the record regarding the potential verdict under the governing law, summary judgment must be awarded to the moving party.  Anderson, 477 U.S. at 250.

    A.    Qualified Immunity

       Anderson maintains he is entitled to qualified immunity from Martin's section 1983 malicious prosecution claim.  Qualified immunity is an entitlement not to stand trial, not a defense from liability.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Qualified immunity protects police officers from "undue interference with their duties and from potentially disabling threats of liability," Wright v. City of Philadelphia, 409 F.3d 595, 599 (3d Cir. 2005) (citing Elder v. Holloway, 510 U.S. 514 (1994)), if their conduct did not violate clearly established statutory or constitutional law of which a reasonable person would have been aware.  Wright, 409 F.3d at 599 (citing Harlow v. Fitzgerald, 457 U.S. 800, 806 (1982)).  The standard for determining the reasonableness of an official's belief in the existence of probable cause is whether a reasonably well-trained officer would have known his affidavit failed to establish probable cause and, therefore, he should not have sought a warrant.  Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995).  Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable, will the officer lose the shield of immunity.  Id.  Thus, the qualified immunity doctrine "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  Rowe v. Romano, 940 F. Supp. 798, 802 (E.D. Pa. 1996) (Joyner, J.); Hunter v. Bryant, 502 U.S. 224, 229 (1991).

       Although the existence of probable cause is generally an issue of fact for the jury, courts

must resolve immunity questions as early as possible.  Rowe, 940 F. Supp. at 802.  Therefore,

qualified immunity is a question of law to be decided by the court.  Doe v. Groody, 361 F.3d 232,

238 (3d Cir. 2004).  First, the court must decide whether the facts, taken in a light most favorable

to the plaintiff, establish a constitutional violation.  Saucier, 533 U.S. at 201.  If not, the inquiry

ends.  Gilles v. David, 427 F.3d 197, 203 (3d Cir. 2005).  If a constitutional violation is

established, the court must determine whether it would be clear to a reasonable officer that his

conduct was unlawful in the situation he confronted.  Saucier, 533 U.S. at 202.  "If an official

could have reasonably believed that his or her actions were lawful, the official receives immunity

even if in fact the actions were not lawful."  Forbes v. Twp. of Lower Merion, 313 F.3d 144, 148

(3d Cir. 2002).  The officer may be entitled to immunity even if he is mistaken as to what the law

requires.  Carswell v. Borough of Homestead, 381 F.3d 235, 242 (3d Cir. 2004).

Thus, I must decide whether the facts taken in a light most favorable to Martin

demonstrate that a constitutional violation has occurred.  See Saucier, 533 U.S. at 201.  The

constitutional violation at issue here is whether Anderson had probable cause at the time he

arrested and charged Martin.  Martin argues the question of whether Anderson had sufficient

probable cause is one for the jury.  The jury, however, does not determine the contours of

Martin's clearly established right.  Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000); see also

Doe v. Groody, 361 F.3d at 238; Rowe, 940 F.Supp. at 802.  Rather, it is the court that makes a

legal determination about the existence of a right, and whether it is clearly established.  Wilson,

212 F.3d at 786.  Only then does the court determine whether the facts are such that a reasonable

jury could conclude the clearly established right was violated.  Id.

For the following reasons, I conclude Martin has not alleged a constitutional violation

10

because Anderson had sufficient probable cause.  Even if a constitutional violation had been

alleged, a reasonable officer would have believed his actions were lawful based on the evidence

he possessed, combined with the prosecutorial and judicial authorization for the arrest.  Id.  Even

crediting Martin's claims concerning the delays in obtaining title for legitimately purchased

stolen property, no reasonable jury could conclude Martin's constitutional rights were violated.

Martin alleges Anderson maliciously prosecuted him because he initiated criminal

proceedings without probable cause and for a purpose other than bringing Martin to justice.

"To prove malicious prosecution under section 1983 when the claim is under the Fourth

Amendment, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the

criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without

probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the

plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept

of seizure as a consequence of a legal proceeding."  See Johnson v. Knorr, 477 F.3d 75, 81-82

(3d Cir. 2007) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).

Anderson concedes Martin can establish the first and second elements of the malicious

prosecution claim because Anderson initiated criminal proceedings against Martin on September

22, 2004, which were dismissed in Martin's favor on October 6, 2006, when the District

Attorney's office withdrew the charges.  See Defendants' Brief at 4.  The crux of this inquiry,

therefore, is whether Anderson lacked probable cause to initiate criminal proceedings against

Martin.  See Wright, 409 F.3d at 604 (holding "[t]o prevail on [a malicious prosecution] claim,

[the plaintiff] must show that the officer[] lacked probable cause to arrest [him]").  Viewing the

evidence in light most favorable to Martin, Anderson had probable cause to arrest and initiate

criminal proceedings.

      B.      <u>Probable Cause</u>

      People are "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, . . . and no Warrants shall issue, but upon probable cause." U.S. Const. Amend. IV.  An arrest was made with probable cause if at the moment of the arrest, the facts and circumstances within the arresting officer's knowledge, and of which he had reasonably trustworthy information, were sufficient to warrant a prudent man in believing the suspect had committed or was committing an offense.  <u>Wright</u>, 409 F.3d at 602; <u>see also</u> <u>Adams v. Williams</u>, 407 U.S. 143, 148-49 (1972).  The constitutional validity of the arrest does not depend on whether the suspect actually committed any crime.  <u>Wright</u>, 409 F.3d at 602.  It is also irrelevant what crime with which a suspect is eventually charged or whether a person is later acquitted of the crime for which he was arrested.  <u>Id.</u>

      Probable cause requires a belief of guilt that is reasonable, as opposed to certain.  <u>Id.</u> at 601-02.  "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction."  <u>Adams</u>, 407 U.S. at 149.  Probable cause involves probabilities.  "These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." <u>Id.</u>  In a probable cause inquiry, the officer's subjective belief about the existence of probable cause is not relevant.  <u>Egolf v. Witmer</u>, 421 F. Supp. 2d 858, 864 (E.D. Pa. 2006) (Diamond, J.). It is the officer's objectively reasonable belief that each element of the criminal offense has been satisfied that is relevant.  <u>Id.</u>  "[T]he facts must support a reasonable belief that there is a fair probability that the person committed the crime at issue."  <u>Copeland v. Reading Police Dept.</u>, *slip*

12

*op.* 2008 WL 3890006, at *5 (E.D. Pa. Aug. 21, 2008) (Baylson, J.) (citing Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000)).

Moreover, police officers are "entitled to draw reasonable inferences" based on their own personal knowledge and prior experiences.  See United States v. Ortiz, 422 U.S. 891, 897 (1975); see also Copeland, 2008 WL 2890006, at * 5.  The probable cause inquiry does not require police officers to "correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate."  See Wright, 409 F.3d at 603.  I may conclude probable cause exists as a matter of law and grant summary judgment if the evidence, viewed in the light most favorable to Martin, "reasonably would not support a contrary factual finding."  See Merkle v. Upper Dublin School Dist., 211 F.3d 782, 788-89 (3d Cir. 2000); see also Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998).

A finding that probable cause existed for one of the charges will dispose of malicious prosecution claims for the remaining charges.  See Wright, 409 F.3d at 604.  This rule applies, however, only to claims of false arrests and situations where "the circumstances leading to the arrest and prosecution were totally intertwined."  See Johnson, 477 F.3d at 82 n.9.  Specifically, in Wright, the defendant police officer merely "prepared an affidavit of probable cause for [the plaintiff's] arrest, and then, after an assistant district attorney approved the affidavit, arrested the plaintiff."  See id. at 84 (comparing Wright).  There, because the officer's involvement ended at the time of the arrest, the court determined a finding of probable cause for one of the charges "dispose[d] of [the plaintiff's] malicious prosecution claims with respect to all charges."  See Wright, 409 F.3d at 604.

In Johnson, however, the officer's conduct was "bifurcated in the sense that the agents

13

first arrested [the plaintiff] and then, after the arrest, [the officer-defendant] took steps by supplying information to [another officer] that led to [the plaintiff's] prosecution" on additional charges.  See Johnson, 477 F.3d at 82 n.9.  Thus, the officer's "involvement in both the arrest and the initiation of criminal proceedings against [the plaintiff] was more extensive and lasted beyond the issuing of an affidavit of probable cause for his arrest and the arrest itself."  See id. at 84.  Because of the bifurcated nature of the officer-defendant's conduct, the court in Johnson declined to apply Wright, and held the court must separately analyze each charge claimed to have been maliciously prosecuted.  See id. at 85.

III.    Discussion

    Martin's malicious prosecution claim falls under Wright because Anderson's involvement ended at the time of arrest.  Like the officer in Wright, Anderson prepared the affidavit of probable cause, and after the District Attorney approved it and a judge executed it, he arrested Martin.  Unlike the officer in Johnson, Anderson did not engage in any further conduct after Martin's arrest to cause more charges to be brought against him.  Thus, the arrest and prosecution of Martin are "totally intertwined," see Wright, 409 F.3d at 604, and I need only find probable cause for any one of the charges brought against Martin.[6]  For example, Anderson charged Martin with one count of receiving stolen property based on his possession of the gray Toyota 4Runner.  See 18 Pa.C.S.A. § 3925(a) ("A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.").  The following evidence supports a finding Anderson had

---

[6]  At oral argument, Martin agreed.

sufficient probable cause to believe, more likely than not, Martin committed this crime: an employee eyewitness saw the 4Runner at M & R Auto, Anderson checked the 4Runner's VIN number in the NCIC computer system and discovered it was listed as stolen, Anderson recovered the stolen 4Runner after searching M & R Auto, and Martin admitted to Anderson he did not have title to this vehicle and suspected the vehicle was stolen.

In the alternative, I find there is probable cause to support all of the charges. All seven of the charges have a knowledge component. For each, Anderson relied on Martin's admissions he owned M & R Auto, he possessed three vehicles without title, and suspected the vehicles he received from B & H Auto were stolen. In addition, Anderson possessed the following evidence upon which he based his finding of probable cause: (1) information from Lopez on November 21, 2001 that he observed Martin's son stripping a gray Toyota 4Runner, Martin and his son had a conversation next to the gray Toyota 4Runner, Martin's son put what was left of the Toyota 4Runner in a locked garage, which was not an ordinary practice, and Martin's son told Lopez he was cutting the 4Runner because M & R Auto could not get title for it; (2) Anderson corroborated information provided by Lopez, therefore finding him a credible witness; (3) the results from the NCIC search that the VIN numbers Lopez provided were listed as stolen, which Anderson confirmed with the respective police departments; (4) Anderson seized the following stolen vehicles or parts after searching M & R Auto: a Toyota 4Runner, a Ford Mustang, a Toyota Camry, and a Chevrolet Blazer;[7] and (5) the search revealed the Toyota Camry's VIN

---

[7] Martin argues Anderson lacked probable cause because the items used to initiate criminal proceedings against him were improperly seized. Although the trial court suppressed all evidence derived from the search of M & R Auto, I may consider it to determine whether Anderson possessed sufficient probable cause to arrest Martin. In Hector v. Watt, 235 F.3d 154, 158 (3d Cir. 2000), the Third Circuit declined to "continue[] application of the exclusionary rule"

numbers were destroyed, obliterated, and altered, and one of the Ford Mustang's parts was

missing the required Federal Certification Label with its VIN number.  These facts and

circumstances, which were within Anderson's knowledge, are sufficient to warrant a prudent

person to believe, more likely than not, Martin knowingly owned and operated a chop shop;

possessed motor vehicle parts knowing they had been "altered . . . destroyed, . . . obliterated, or

removed," 18 Pa.C.S. § 1.4(b); and intentionally received the 4Runner, Mustang, Camry, and

Blazer from B & H Auto believing they were stolen, see 18 Pa.C.S.A. § 3925(a).

The issue is not, as Martin suggests, that Anderson failed to credit Martin's explanation

about the legitimate nature of his questionable purchase of automobiles and automobile parts.

Rather, the issue is whether Anderson's decision to charge Martin was based on reasonable

inferences that supported a fair probability Martin committed the charged offenses.  See

Copeland, 2008 WL 3890006, at *5; Egolf v. Witmer, 421 F. Supp. 2d 864.  Although a

reasonable officer could have credited Martin's explanation of industry practices, Anderson's

failure to do so was not objectively unreasonable given the other evidence he possessed,

including the NCIC verification of stolen cars and an unsolicited tip from an insider in Martin's

business.

---

applied in the plaintiff's criminal proceeding to the plaintiff's section 1983 civil suit.  The court
explained the exclusionary rule which allowed the plaintiff to avoid criminal prosecution "is not
a personal constitutional right of the party aggrieved."  See id. at 158.  Other courts agree.  See
Konopka v. Borough of Wyoming, 383 F. Supp. 2d 666, 675 (M.D. Pa. 2005) ("While the fruits
of an allegedly illegal search may be inadmissible in criminal proceedings under the exclusionary
rule, the illegality of said search does not vitiate the existence of probable cause" for arrest where
probable cause otherwise exists.); see also Cox v. Pate, slip op., 2007 WL 654317 at *3 (W.D.
Pa. Feb. 27, 2007) ("[T]he law is clear that the unlawful search did not vitiate the probable cause
to arrest" the plaintiffs).

Further, Anderson also had the support of the District Attorney, the county's chief law enforcement officer.  The District Attorney's Office was involved in the investigation of Martin, beginning with the search warrant application in November 2001 through the subsequent filing of formal charges in September 2004.  See Affidavit of Todd Brown at ¶ 5.  The District Attorney's Office reviewed a draft of the charges, authorized filing them, and agreed to prosecute Martin.  See id. at ¶ 12.  In addition, a neutral state court judge agreed with the decision and issued an arrest warrant.  See Douris v. Schweiker, 2003 WL 22533701 at * 14 (E.D. Pa. Oct. 21, 2003) (although a judge's finding of probable cause "does not automatically bar suit, it raises a presumption that probable cause was present").

 Martin cites four issues he believes constitute genuine issues of material fact as to whether Anderson had sufficient probable cause.  First, Martin claims Anderson deliberately refrained from conducting an investigation of the facts.  Martin points to Anderson's failure to investigate B & H Auto of Maryland, the company from whom Martin purchased the stolen vehicles or parts, to determine Martin did not know the vehicles were stolen.  Martin also alleges Anderson was deliberately indifferent to Martin's guilt or innocence because he failed to consider invoices from B & H Auto and checks written by M & R Auto for the stolen vehicles.  Martin alleges these invoices and checks constitute exculpatory evidence because they establish he purchased the parts in good faith, without knowledge they were stolen.

Although a police officer cannot simply ignore or omit exculpatory evidence in an affidavit of probable cause supporting arrest, Wilson v. Russo, 212 F.3d 781, 790 (3d Cir. 2000), "[o]nce a police officer has discovered sufficient facts to establish probable cause, the officer has no constitutional duty to further investigate in hopes of finding exculpatory evidence."  Patterson

17

v. Sch. Dist. of Phila., No. 99-CV4792, 2000 WL 1020332, at * 6 (E.D. Pa. July 19, 2000)

(Newcomer, J.); see also Porter v. Gray, *slip. op.*, 2007 WL 464694, at *12 (W.D. Pa. Feb. 13,

2007) (McLaughlin, J.) (although police officer could have performed "a more thorough

investigation" of allegedly exculpatory evidence, including contacting a person with knowledge

of the events, "these arguable deficiencies do not rise to the level of a constitutional violation").

By claiming Anderson failed to investigate exculpatory evidence, Martin is "inject[ing] a due

process argument into what is primarily a fourth amendment claim," Wilson, 212 F.3d at 789 n.5,

because he essentially claims Anderson was negligent in his investigation.  Negligence by a

public official, however, "is not actionable as a due process deprivation of a civil right."  See id.

(citing Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995)).[8]

_____

    [8] In the complaint, Martin asserts a separate failure to investigate claim, however, he fails
to cite any law to support such a claim.  After oral argument, Martin submitted case law
discussing a due process claim for intentional failure to investigate.  To establish a due process
violation for failure to investigate, the plaintiff must show the defendant acted intentionally or
recklessly; a showing of mere negligence is not sufficient.  See e.g., Brockington v. City of
Sherwood, Arkansas, 503 F.3d 667, 672 (8th Cir. 2007) (plaintiff "must show that [defendant's]
failure to investigate was intentional or reckless, thereby shocking the conscience" because
negligently failing to investigate further does not violate due process); Russo v. City of
Bridgeport, 479 F.3d 196, 210, 212 (2d Cir. 2007) (denying qualified immunity on motion for
summary judgment because defendant police officers "acted intentionally in hiding exculpatory
evidence," which coupled with other evidence demonstrated "an intentional violation of, or
deliberate indifference to, [the plaintiff]'s constitutional rights"); Wilson v. Lawrence County,
Missouri, 260 F.3d 946, 955 (8th Cir. 2001) ("[O]nly reckless or intentional failure to investigate
other leads offends a defendant's due process right," however, a negligent failure to investigate
does not violate due process); Sanders v. English, 950 F.2d 1152, 1162 (5th Cir. 1992)
(distinguishing between police officer's negligent failure to follow up on exonerative leads with
situation where police officer "knowingly and willfully ignored substantial exculpatory evidence
. . . [and] deliberately looked the other way in the face of exonerative evidence indicating he
arrested the wrong man"); Whitley v. Seibel, 613 F.2d 682, 686 (7th Cir. 1980) (intentional, not
negligent, acts in an investigation, such as misleading or misrepresenting "facts and
circumstances of the case to the assistant state's attorneys involved" violates due process).
    Because I find Anderson's alleged failure to investigate was neither intentional or
reckless, the authority Martin relies on is not controlling.  Thus, I will consider Martin's failure

As outlined above, Anderson possessed sufficient probable cause to arrest and charge Martin.  Thus, he had no constitutional obligation to investigate B & H Auto for the purpose of discovering exculpatory evidence.  See Patterson, 2000 WL 1020332, at * 6; see also Porter, 2007 WL 464694, at *12.  In addition, Anderson made a reasonable decision not to investigate B & H Auto.  Anderson testified he explored cooperation by Martin to pursue an investigation beyond M & R Auto.  See Dep. of Brad Anderson at 178:12-21.  Thus, contacting B & H Auto about Martin would have precluded Martin from pursuing any further transactions to assist in an investigation of B & H Auto.  See id.  Further, Anderson testified an investigation of B & H Auto would not have altered his charging decision because he still believed other evidence established Martin knew or should have known the parts he received from B & H Auto were stolen.  See id. at 180:9-9.  Finally, Anderson believed if he contacted the rollback driver who delivered the vehicles or parts from B & H Auto, and this driver was part of a conspiracy between B & H Auto and M & R Auto, then Anderson would have eliminated the broader conspiracy investigation.  See id. at 214:8-16.

Moreover, Anderson already possessed sufficient probable cause and he was not obligated to further investigate the invoices and receipts to find exculpatory evidence.  Martin

---

to investigate claim only as a factor in resolving the malicious prosecution claim.

In addition, Martin contends the failure to investigate, coupled with political pressure from the Mayor of Lancaster and Anderson's superiors, constitutes malice.  Anderson testified, however, neither his supervisors nor the mayor pressured him to prosecute this case.  See Dep. of Brad Anderson at 44:11-13.  Anderson explained the Mayor would ask him questions and inquire about the status of the case.  See id. at 43:15-17, 45:9-12.  Although he concedes the mayor's inquiries added some pressure, see id. at 44:19-23, I cannot find, viewing the evidence in a light most favorable to Martin, that Anderson's supervisors or the mayor pressured Anderson to file charges against Martin.  There is no evidence Anderson's supervisors or the mayor threatened Anderson's job.  Therefore, I find Martin cannot establish malice.

claims Anderson "chose to ignore the invoices and receipts [he] provided to [Anderson, which]
indicate[d] purchase prices consistent with market value for salvage parts necessary for legal
vehicle construction."  See Plaintiff's Brief at 9.  Contrary to Martin's claim, however, Anderson
testified he reviewed the B & H Auto salvage receipts and the checks provided by Martin, but
was unable to match the checks to the bills of sale or receipts.  See Dep. of Brad Anderson at
171: 22-24, 173:21-24, 174: 19-22.  In addition, Anderson did not consider the invoices and
checks exculpatory because even though Martin "had a check for stolen property[, it] did not
change the fact [the] parts were on stolen status.  And on some of them the numbers were
obliterated.  And so therefore, it didn't change my opinion of [M & R Auto] possessing and
having the parts."  See Dep. of Brad Anderson at 176:8-13.

There is no evidence beyond Anderson's alleged negligence.  Even viewing the evidence
in the light most favorable to Martin, I cannot find any intent by Anderson to subvert the interests
of justice by ignoring or concealing exculpatory evidence or failing to review clearly exculpatory
evidence.  Thus, even if Anderson engaged in a sloppy or negligent investigation, it does not rise
to a constitutional deprivation of Martin's rights.  Further, Anderson provided a reasonable
explanation why he did not investigate B & H Auto and why he did not find the invoices and
checks exculpated Martin.[9]  Absent a showing of intentional or reckless conduct, I find Martin
cannot establish a constitutional dimension to Anderson's failure to pursue a thorough
investigation.

Second, Martin claims Anderson's affidavit of probable cause was primarily based on

---

[9]  For this reason, I also reject Martin's argument that Anderson chose to ignore evidence
that M & R Auto is an approved business that performed work for numerous insurance
companies, and Martin and/or M & R Auto hold various official licenses.

Lopez's suspicions and some facts provided by Lopez were incorrect.[10]  Information from a

"single, apparently credible, eyewitness is sufficient to allow a police officer to form probable

cause."  See Copeland, 2008 WL 2890006, at * 6 (citing Merkle v. Upper Dublin Sch. Dist., 211

F.3d 782, 790 (3d Cir. 2000)).  Anderson found Lopez a credible witness, which was a

reasonable determination.  First, Lopez was an employee of M & R Auto, who detailed

suspicious activity he allegedly observed and provided VIN numbers from two stolen vehicles in

Martin's possession.  Further, Anderson corroborated Lopez's information by running the VIN

numbers through the NCIC computer system and visiting M & R Auto to confirm Lopez's

description of the premises, including the presence of a red dumpster and vehicle parts.  Thus,

Martin's argument fails because information from Lopez alone is sufficient to form probable

cause, and Anderson's determination of credibility was not unreasonable at the time.

 Third, Martin claims Anderson lacked probable cause because he waited more than three

years after the initial search of M & R Auto to initiate criminal proceedings against Martin.[11]

Under Pennsylvania law, however, the statute of limitations for bringing charges for receiving

---

 [10]  It is unclear in Martin's brief whether he is referring to the Affidavit of Probable Cause
accompanying the Search Warrant application or the Criminal Complaint.  In his brief, Martin
concedes "[f]or purposes of the malicious prosecution claim, the issue is not whether Defendant
Anderson had sufficient probable cause to execute a search warrant based on his Affidavit of
Probable Cause, but whether Defendant had sufficient probable cause to initiate criminal
proceedings against the Plaintiff."  See Plaintiff's Brief at 4.  Nonetheless, Martin continues to
emphasize Anderson did not have probable cause to search M & R Auto.  Because Martin did not
present this claim in his Complaint, I will not discuss the legality of the search.  Further, the
Court of Common Pleas already ruled the search was illegal.  Viewing the evidence in light most
favorable to Martin, I will interpret his argument as challenging the sufficiency of the Affidavit
of Probable Cause accompanying the Criminal Complaint filed on September 22, 2004.

 [11]  Martin also raises this argument as proof Anderson acted maliciously or for a purpose
other than bringing Martin to justice.  See Plaintiff's Brief at 6.

stolen property, 18 Pa.C.S. § 3925(a), and for violating the Chop Shop Act, 18 Pa. C.S. § 1.1, is

five years from the time the offense is committed.  See 42 Pa. C.S. § 5552(b)(1), (5).  The police

searched M & R Auto and Martin's home on November 21, 2001 and November 28, 2001,

respectively, and charges were filed against Martin on September 22, 2004.  Further, based on

information provided by Lopez, the alleged "chopping" by Martin's son occurred on November

13 or 14, 2001.  Thus, Anderson initiated criminal proceedings against Martin within the five-

year statute of limitations.

   Finally, Martin argues Anderson could not establish conclusively that Martin knew the

vehicles were stolen.  In determining probable cause, however, Anderson was not required to

conclusively establish Martin's knowledge.  Rather, he merely needed an "objectively reasonable

belief" that more likely than not, Martin knew the vehicles were stolen.  See Egolf v. Witmer,

421 F. Supp. 2d at 864.  As outlined earlier, Anderson relied on Martin's admissions he owned

M & R Auto, Martin's possession of three vehicles without legal title, and Martin's suspicion the

vehicles he received from B & H Auto were stolen to establish knowledge.  Anderson's belief

was objectively reasonable and, therefore, Martin's argument fails.

   After considering the evidence in light most favorable to Martin, I find Anderson's

conduct did not violate a clearly established constitutional law of which a reasonable officer

would have been aware.  Wright, 409 F.3d at 599.  Anderson was not "required to undertake an

exhaustive investigation in order to validate the probable cause that already existed" in his mind.

See Lynn v. Christner, 184 Fed. Appx. 180, 184 (3d Cir. 2006).  A reasonably well-trained

officer would have known that Anderson's affidavit established sufficient probable cause.

Anderson is therefore entitled to qualified immunity.

Even if Martin could establish Anderson violated a clearly established constitutional right, I would conclude Anderson reasonably believed his actions were lawful.  Saucier, 533 U.S. at 202.  The critical inquiry at the second step of the qualified immunity inquiry is whether, under the circumstances, Anderson reasonably believed there was probable cause to arrest Martin.

Like Anderson, a reasonable officer would have believed there was sufficient probable cause to arrest Martin.  Therefore, even had probable cause been insufficient based on Martin's claim he legitimately operated a salvage business, I would conclude Anderson reasonably, but mistakenly, concluded probable cause to make an arrest was present.  Orsatti, 71 F.3d at 483 ("The Court has made clear that in such cases those officers, like other officials who act in ways they reasonably believe to be lawful, will not be held personally liable.").  Thus, at this second level of inquiry, Anderson is shielded by qualified immunity as a matter of law.

IV.    State Law Claims

For the same reasons described above, because Anderson had probable cause to arrest and charge Martin, Martin's malicious prosecution claim under Pennsylvania law fails, and Anderson is entitled to qualified immunity under the Tort Claims Act.[12]

Under the Tort Claims Act, a municipal employee may be held liable only when his or her conduct constitutes a "crime, actual fraud, actual malice, or willful misconduct."  42 Pa.C.S.A. § 8550.  "Willful misconduct" means the state actor understood the actions he took were illegal, yet chose to take them anyway.  See Johnson v. School Dist. of Philadelphia, *slip. op.*, 2007 WL 3927381 at *10 (E.D. Pa. Aug. 21, 2008) (Pratter, J.).  Conduct is "willful" when the state actor

---

[12]  42 Pa.C.S.A. § 8541 provides: "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."

23

"intend[s] to bring about the result that followed, or at least [was] aware that it was substantially certain to follow, such that intent may be implied."  See id. (citing Bright v. Westmoreland County, 443 F.3d 276, 287 (3d Cir.2006)).

Under Pennsylvania law, to prove malicious prosecution, a plaintiff must show: "(1) the defendant[] initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor, (3) the proceeding was initiated without probable cause; and (4) the defendant[] acted maliciously or for a purpose other than bringing the plaintiff to justice."  See Donahue v. Gavin, 280 F.3d 371, 379 (3d Cir. 2002); see also Kelley v. General Teamsters, Chauffeurs and Helpers, Local Union 249, 544 A.2d 940 (Pa. 1988).  Probable cause exists when there is "a reasonable ground of suspicion supported by circumstances sufficient to warrant that an ordinary prudent person in the same situation could believe a party is guilty of the offense charged."  Corrigan v. Central Tax Bureau of PA., Inc., 828 A.2d 502, 505 (Pa. Cmwlth. Ct. 2003) (citing Miller v. Pennsylvania R.R. Co., 89 A.2d 809, 811-812 (Pa.1952)).  "If probable cause is shown to exist, an absolute defense is established against an action for malicious prosecution and the prosecutor's motive, malicious or otherwise, is immaterial."  Meiksin v. Howard Hanna Co., Inc., 590 A.2d 1303, 1305 (Pa. Super. Ct. 1991).

At oral argument, Martin conceded if his section 1983 malicious prosecution claim failed, Anderson would be entitled to immunity under the Tort Claims Act because Martin would be unable to show Anderson engaged in willful misconduct absent a finding his prosecution was malicious.  Because I found Anderson did not maliciously prosecute Martin, Anderson did not engage in willful misconduct and, therefore, he is entitled to immunity under the Tort Claims Act.

24

In addition, I grant Anderson's motion for summary judgment as to Barbara Martin's loss of consortium claim.  "Under Pennsylvania law, loss of consortium derives only from the injured spouse's right to recover in tort . . . ." McInerney v. Moyer Lumber & Hardware, Inc., 244 F. Supp.2d 393, 402 (E.D. Pa. 2002) (citing Little v. Jarvis, 280 A.2d 617, 620 (Pa. Super. Ct.1971)).  When the spouse's claims are dismissed, the claims for consortium must also be dismissed.  Scattaregia v. Shin Shen Wu, 495 A.2d 552, 554 (Pa. Super. Ct. 1985).  Because I grant summary judgment on Martin's malicious prosecution claims, no tort claim remains, and, accordingly, Barbara Martin's loss of consortium claim fails as a matter of law.

Likewise, I grant summary judgment on Martin's claim for punitive damages and attorney's fees.  When an underlying cause of action is dismissed, the accompanying claim for punitive damages must also be dismissed.  See Kirkbride v. Lisbon Contractors, Inc., 555 A.2d 800, 802-803 (Pa. 1989); see also In re Paoli R.R. Yard PCB Litigation, 2000 WL 1279922, at *5 n.10 (finding claim for punitive damages "is derivative and viable only as long as the underlying cause of action is viable").  Further, because I dismiss Martin's malicious prosecution claim filed pursuant to section 1983, "there is no basis to consider an award of attorney's fees pursuant to 42 U.S.C. § 1988."  See Webb v. City of Philadelphia, 1999 WL 793466 at *10 (E.D. Pa. Oct. 6, 1999) (Bechtle, J.).

III.    Conclusion

I grant Anderson's motion for qualified immunity under both federal and Pennsylvania law, and enter summary judgment on all claims because the facts, viewed in light most favorable to Martin, establish Anderson possessed sufficient probable cause to arrest and charge Martin.

An appropriate order follows.

25